OPINION
BILL MEIER, Justice.
In a single issue, Appellant J.J. appeals the trial court’s order terminating her parental rights to her children, D.R.J. and T.F.J. We will affirm.
CPS received a referral on June 1, 2009, involving concerns of sexual abuse of J.J., her sister M.J., and her twin cousins L.J.l and L.J.2 by J.J.’s and M.J.’s brother K.M. At the time of the referral, all were members of the same household with C.J.— J.J.’s, M.J.’s, and K.M.’s mother. This was the sixth referral involving C.J.’s home since April 2007. CPS had received a referral then involving neglectful supervision of J.J. by C.J. because J.J. was fourteen years old and pregnant. CPS received a second referral in January 2008 involving sexual abuse of J.J., M.J., L.J.1, and L.J.2 by K.M. CPS received a third referral in June 2008 involving neglectful supervision of J.J. by C.J. because J.J. was pregnant with her second child. CPS received a fourth referral in August 2008 involving sexual abuse of L.J.l by K.M. And in January 2009, CPS received a fifth referral involving sexual abuse of L.J.l and L.J.2. Each of the first five referrals were either closed at intake, closed administratively, or ruled out.
CPS investigator Beth Hobbs met with J.J. on two occasions to discuss the latest referral. At the first meeting, J.J. was in juvenile detention for evading arrest after an altercation with C.J. C.J. had whipped J.J. with a two- to three-foot board and a weapon, and J.J. had grabbed a knife and threatened C.J. before jumping out of a two-story window onto C.J.’s car. Hobbs concluded the interview quickly because J.J. was uncommunicative. At the second meeting, J.J. expressed that she had no concerns about her children, including having them in her mother’s care, and she was unwilling to speak about whether K.M. was the father of her two children. Hobbs also spoke with C.J., who was unwilling to work with CPS. Concerned about (1) the ongoing sexual relationship between J.J. and K.M., which C.J. appeared to be aware of, and (2) D.R.J. and T.F.J. being at risk for sexual abuse by K.M. like J.J., M.J., L.J.1, and L.J.2, CPS removed D.R.J., and T.F.J. (and J.J., M.J., L.J.1, and L.J.2) from C.J.’s household. All of the children were placed into foster care.
J.J. moved between foster homes from June 2009 to September 2010. At one point, D.R.J. and T.F.J. lived with J.J. at a foster home, and DFPS felt that J.J. had moved closer towards complete reunification with her children. However, J.J.’s behavior, including an incident in which she threw water from a microwave that hit T.F.J., concerned the foster parent, and J.J. was ultimately removed from the foster home and admitted to a psychiatric hospital. After being released from the hospital, J.J. demanded to be returned to her mother’s care. Concerned that J.J. returning to C.J.’s household would “set [J.J.] back tremendously,” DFPS opposed her request, but she was ultimately permitted to live with C.J.
J.J. successfully performed only some of the services that the trial court ordered her to complete to obtain the return of D.R.J. and T.F.J. At some point, DFPS’s *319 plan for J.J. regarding D.R.J., and T.F.J. changed from reunification to termination.
J.J. testified at trial that KM. had sexually abused her, M.J., L.J.1, and L.J.2; that KM. began sexually abusing her when she was twelve years old; that K.M. continued to sexually abuse her until she was placed into foster care; and that K.M. is the father of her two children. J.J. explained that she moved back to C.J.’s household despite realizing that she “wouldn’t be able to get [her] kids” back, and she acknowledged squandering numerous opportunities for counseling and family therapy. The jury found by clear and convincing evidence that termination of the parent-child relationship between J.J. and D.R.J. and T.F.J. was proper under family code section 161.001(1X0) and that termination was in the children’s best interests.
In her only issue, J.J. challenges the legal and factual sufficiency of the evidence to support the jury’s findings that D.R.J. and T.F.J. were removed from J.J.’s care due to abuse or neglect by her against each of the children.
Termination decisions must be supported by clear and convincing evidence. Tex. Fam.Code Ann. § 161.001 (West Supp.2012), § 161.206(a) (West 2008). Evidence is clear and convincing if it “will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.” Id. § 101.007 (West 2008).
In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. In re J.P.B., 180 S.W.3d 570, 573 (Tex.2005). We review all the evidence in the light most favorable to the finding and judgment. Id. We consider evidence favorable to termination if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable factfinder could not. Id.
In reviewing the evidence for factual sufficiency, we give due deference to the factfinder’s findings and do not supplant the verdict with our own. In re H.R.M., 209 S.W.3d 105, 108 (Tex.2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated section 161.001(1) and that termination of the parent-child relationship would be in the best interest of the child. Tex. Fam.Code Ann. § 161.001; In re C.H., 89 S.W.3d 17, 28 (Tex.2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. H.R.M., 209 S.W.3d at 108.
Termination of the parent-child relationship is warranted under family code section 161.001(l)(O) if the parent has
failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child’s removal from the parent under Chapter 262 for the abuse or neglect of the child.
Tex. Fam.Code Ann. § 161.001(l)(O) (emphasis added).
As alluded to above, J.J. does not challenge the sufficiency of the evidence to show that she failed to comply with the provisions of the order that established the actions necessary for her to obtain the *320 return of the children or that the children had been in the conservatorship of DFPS for at least nine months. Instead, she argues that while there is evidence that she, M.J., L.J.1, and L.J.2 were sexually abused by K.M., there is no evidence or insufficient evidence that D.R.J. and T.F.J. were removed from her care because (1) they were abused or neglected (2) by her. J.J.’s arguments are unpersuasive.
Applying well-established rules of statutory construction, subsection (0) does not require that the parent who failed to comply with a court order be the same person whose abuse or neglect of the child warranted the child’s removal. See In re S.N., 287 S.W.3d 183, 188 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (“Had the legislature intended such a requirement, it could have easily provided that conserva-torship be ‘as a result of the child’s removal from the parent under Chapter 262 for the abuse or neglect of the child by the parent.’ ”); In re M.N., No. 11-10-00129-CV, 2011 WL 917837, at *3 (Tex.App.-Eastland Mar. 17, 2011, no pet.) (mem. op.) (reasoning similarly). Thus, notwithstanding our reasoning below attributing abuse and neglect of D.R.J. and T.F.J. to J.J., DFPS did not have to prove that the abuse or neglect of D.R.J. and T.F.J. was caused by J.J.
As for the “abuse or neglect” prong of subsection (O), several appellate courts have observed that “abuse or neglect” is not defined in the statute or by the case law and must be determined on a case-by-case basis. See In re A.A.A., 265 S.W.3d 507, 515 (Tex.App.-Houston [1st Dist.] 2008, pet. denied); see also In re J.T.G., No. 14-10-00972-CV, 2012 WL 171012, at *14 (Tex.App.-Houston [14th Dist.] Jan. 19, 2012, pet. denied) (mem. op.). We agree with that assessment.
Here, J.J. testified that K.M., her own brother, began sexually abusing her at age twelve and continued to do so until she—and her two children fathered by K.M.—were removed from C.J.’s household. K.M., whom J.J. described at trial as a “predator,” also sexually abused M.J., his other sister, and L.J.1 and L.J.2, his cousins. Thus, K.M., who had at one point been sent to juvenile detention for sexual assault, had sexually abused almost every child in C.J.’s residence. When Hobbs questioned J.J. after the sixth referral, J.J. expressed no concern about leaving her children in C.J.’s household. Further, it appeared to Hobbs that C.J. was aware of KM.’s incestuous sexual abuse, but there is no evidence that she took steps to confront the situation. The conservatorship worker assigned to the case testified that there are “several” options available to a thirteen year old who has a child and wants to move the child out of the house.
The evidence of J.J.’s lack of concern about leaving D.R.J. and T.F.J. in the same environment where K.M. was sexually abusing other family members was sufficient to show neglectful supervision of D.R.J. and T.F.J. by J.J. Moreover, the undisputed evidence of ongoing sexual abuse of multiple family members occurring in the same household where D.R.J. and T.F.J. lived was sufficient to demonstrate emotional abuse of D.R.J. and T.F.J. while in J.J.’s care. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury’s family code section 161.001(l)(O) findings. See Tex. Fam.Code Ann. § 161.001(l)(O). We overrule J.J.’s only issue and affirm the trial court’s order terminating J.J.’s parental rights to D.R.J. and T.F.J.
GARDNER, J., filed a concurring opinion.