

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-13-00005-CV**

**IN THE INTEREST OF M.D. AND L.D., CHILDREN**

**From the 52nd District Court**
**Coryell County, Texas**
**Trial Court No. COPS-12-41,126**

**MEMORANDUM OPINION**

Raising four issues, Appellant G.D. appeals the trial court's termination of his parental rights to M.D. and L.D. after a bench trial. We will affirm.

In a proceeding to terminate the parent-child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v.*

*Adams,* 544 S.W.2d 367, 370 (Tex. 1976). If multiple predicate violations under section 161.001(1) were found in the trial court, we will affirm based on any one ground because only one predicate violation under section 161.001(1) is necessary to a termination judgment. *In re S.N.,* 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

The trial court found the following three predicate violations as grounds for termination as to each child: (1) G.D. knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being (Family Code subsection 161.001(1)(D)); (2) G.D. engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being (Family Code subsection 161.001(1)(E)); and (3) G.D. failed to comply with provisions of a court order specifically establishing actions necessary for the parent to obtain return of the child (Family Code subsection 161.001(1)(O)). The trial court also found that termination of G.D.'s parental rights was in the children's best interest.[1]

G.D.'s first three issues assert, respectively, that the evidence is legally and factually insufficient to support the three predicate violations. The standards of review for legal and factual sufficiency in termination cases are well-established. *In re J.F.C.,* 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). Due process requires the petitioner to justify termination of parental rights by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.,* 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is

---

[1] The trial court also terminated the parental rights of L.G., the children's mother, but L.G. did not appeal.

defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

We begin with issue three and G.D.'s legal and factual sufficiency complaints about the trial court's subsection 161.001(1)(O) finding. That subsection provides in pertinent part:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

TEX. FAM. CODE ANN. § 161.001(1)(O).

G.D.'s argument is not that the evidence is insufficient to prove that he failed to comply with the provisions of the trial court's order that required him to comply with the Department's service plan,[2] but that subsection 161.001(1)(O) does not apply to him because the children were removed because of abuse or neglect by the mother, L.G., not by G.D.

The Fourteenth District Court of Appeals appears to be the first court to have addressed this precise issue, and it held that subsection 161.001(1)(O) does not require

---

[2] The Department created a service plan for G.D., which he signed on March 12, 2012, and it was adopted in an April 14, 2012 status hearing order. A Department caseworker testified that G.D. was ordered to pay child support at the onset of the case, but his last payment was in June 2012, and that G.D. stopped participating in the Department's services in May 2012.

that the parent who failed to comply with a court order be the same parent whose abuse or neglect warranted the child's removal. *In re S.N.*, 287 S.W.3d 183, 187-89 (Tex. App.—Houston [14th Dist.] 2009, no. pet.). Thereafter, several other sister courts have agreed with *S.N. See In re D.R.J.*, ___ S.W.3d ___, ___, 2013 WL 452154, at *6 (Tex. App.—Fort Worth Feb. 7, 2013, no pet. h.); *In re A.M.C.*, No. 09-12-00314-CV, 2012 WL 6061031, at *6 (Tex. App.—Beaumont Dec. 6, 2012, no pet.) (mem. op.); *In re A.O*, No. 04-12-00390-CV, 2012 WL 5507107, at *2 (Tex. App.—San Antonio Nov. 14, 2012, no pet.) (mem. op.); *In re M.N.*, No. 11-10-00129-CV, 2011 WL 917837, at *3 (Tex. App.—Eastland Mar. 17, 2011, no pet.) (mem. op). We join them and hold that subsection 161.001(1)(O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect warranted the child's removal.[3] Accordingly, we overrule issue three. Having found that the evidence is sufficient to support the trial court's finding under subsection 161.001(1)(O), we need not address G.D.'s first two issues.

In his fourth issue, G.D. asserts that the evidence is legally and factually insufficient to support the trial court's findings that termination of his parental rights to M.D. and L.D. is in their best interest. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and

---

[3] G.D. also asserts that the children were not in the temporary managing conservatorship of the Department for the requisite nine months. The record shows that the Department was named temporary managing conservator on February 10, 2012. In the final trial, the evidence closed on November 20, 2012. Therefore, the children had been in the temporary managing conservatorship of the Department for nine months and eleven days, thus satisfying the nine-month requirement in subsection 161.001(1)(O).

physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

The evidence shows that the Department became involved with G.D. and L.G., the children's mother, when L.D. tested positive for methamphetamine at birth in June 2011. G.D. never denied knowing that L.G. was using methamphetamine during her pregnancy with L.D., according to Sarah Hayden, the assigned Department caseworker. Hayden testified that a Family Based Safety Services (FBSS) case was initiated for G.D. and L.G. The FBSS case lasted for six months; during it, the children were placed with Tammy and Chris, their paternal aunt and uncle, for the first three months. G.D. engaged in FBSS services but tested positive for marijuana during the FBSS case.

A week after the children were returned to G.D. and L.G., G.D. moved out of the

home, leaving the children alone with L.G., who was unemployed and without any means to pay bills. The Department then received a referral that L.G. was driving a car with the children who were not in car seats. The children were removed in February 2012, and L.G. tested positive for drugs at that time. The children were again placed with Tammy and Chris, their aunt and uncle. L.G. never participated in any services and had been incarcerated several times during the case. At the time of trial, Hayden could not locate L.G., who had not had contact with the foster parents for two months.

Hayden said that G.D. tested positive for marijuana in March 2012, a week after the show-cause hearing, and again in May. Chris testified that he had known G.D. since 2004 and that G.D. has never had a place of his own to live in except for a month or two each year. He also said that G.D. cannot keep a steady job and has had a recent problem with marijuana and methamphetamine.

G.D. paid child support through June but stopped paying in July. He initially had supervised visitation with the children, but he ceased all contact in May, which is when he also stopped participating in services. G.D. had provided employer information to Hayden in April, but he was terminated from that employment by May or June. At the time of trial, Hayden could not locate G.D.

M.D. was age two and L.D. was one year old at the time of trial. Neither G.D. nor L.G. appeared at trial. Hayden testified that the children had been with Tammy and Chris since February 2012, and except for a couple of months during the FBSS case, L.D. has lived with Tammy and Chris since birth. G.D. did not object to placing the children with them. Hayden opined that G.D.'s parental rights should be terminated

and that the children should be allowed to be adopted by Tammy and Chris.

Chris testified that he and Tammy are bonded to M.D. and L.D. and intend to adopt them. He and Tammy have an approved foster-adoption-kinship home study and are qualified and certified as kinship-foster-adoption parents. He believes that it would be in the children's best interest to be adopted by him and Tammy.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's finding, we hold that a reasonable trier of fact could have formed a firm belief or conviction that termination of G.D.'s parental rights was in the children's best interest. And viewing all the evidence in a neutral light in relation to the *Holley* factors,[4] we hold that a reasonable trier of fact could have reasonably formed a firm belief or conviction that termination was in the children's best interest. Accordingly, the evidence is legally and factually sufficient on the best-interest findings.

We overrule G.D.'s fourth issue and affirm the trial court's order of termination.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
     (Chief Justice Gray concurs in the judgment with a note)*
Affirmed
Opinion delivered and filed April 11, 2013
[CV06]

---

[4] *See In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.) (viewing all the evidence in neutral light for factual sufficiency); *Gibbs v. Tex. Dept. Fam. & Prot. Serv.'s*, No. 03-11-00320-CV, 2012 WL 2979048, at *9 (Tex. App.—Austin July 19, 2012, no pet.) (mem. op.) (same); *In re N.A.*, No. 02-10-00022-CV, 2010 WL 3834640, at *4 (Tex. App.—Fort Worth Sept. 30, 2010, no pet.) (mem. op.) (same).

*(Chief Justice Gray concurs in the judgment to the extent that it affirms the trial court's judgment. A separate opinion will not follow. However, he notes that the standard of review in a case wherein the burden of proof at trial is clear and convincing, in particular appeals of the termination of parental rights, does not involve a review of the evidence in a "neutral light" as expressed in the conclusion of the opinion. The Texas Supreme Court was very specific in expressing not only the standard of review, but in also expressly rejecting all other articulations, when it stated: "But in the interest of uniform decision-making, we reject any articulation of the standard that varies from the standard we announce today." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). I am uncertain why this Court, or other courts, would express the standard of review in any language other than that of the Texas Supreme Court when it stated: "We hold that the appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id.* at 25. In the dissenting opinion in *In re M.A.H.*, Chief Justice Gray explains the distinction between the Supreme Court's articulation of legal and factual sufficiency review in this type of appeal and no useful purpose is served by reexamining that issue or trying to change or rearticulate the standard in this appeal. *In re M.A.H.*, No. 10-02-00234-CV, 2004 Tex. App. LEXIS 6913, *15-18 (Tex. App.—Waco July 28, 2004, no pet.) (Gray, C.J., dissenting).)