Opinion filed January 9, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00211-CV

_____

## IN THE INTEREST OF G.L.O., A CHILD

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV31368**

### MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the mother and the father of G.L.O. Both parents appeal. We affirm.

*Issues*

The mother brings a single appellate issue in which she challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in G.L.O.'s best interest. The father presents four issues on appeal. In his first issue, the father contends that the trial court abused its discretion when it permitted the Department of Family and Protective Services to

amend its pleadings during trial.  In his remaining issues, the father challenges the sufficiency of the evidence.

*Sufficiency of the Evidence*

*A. Standards of Review*

We will first address the parents' challenges to the sufficiency of the evidence.  The termination of parental rights must be supported by clear and convincing evidence.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013).  To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true.  *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent.  *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).  To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child.  FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved.  *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).  But courts may use the non-exhaustive *Holley* factors to shape their analysis.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the

agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### B. Trial Court's Findings

In this case, the trial court found that the mother had committed five of the acts listed in Section 161.001(1)—those found in subsections (D), (E), (O), (P), and (Q). The mother does not challenge these findings. The trial court found that the father had committed two of the acts listed in Section 161.001(1)—those found in subsections (D) and (O). Specifically, the trial court found that the father had placed or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being and that the father had failed to comply with the necessary provisions of a court order. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's and the father's parental rights would be in the best interest of the child.

### C. Evidence at Trial

The record shows that the Department removed G.L.O. from the care of his parents and maternal grandmother, who had previously been granted joint custody of G.L.O. At the time of removal in September 2011, G.L.O. was almost six years old and was living with his mother and his maternal grandmother. Both the mother and the maternal grandmother had a criminal history involving drugs and alcohol, and both tested positive for methamphetamine and amphetamine during the Department's initial investigation in this case. The use of these drugs by G.L.O.'s caregivers constituted an "immediate safety issue" for G.L.O. G.L.O. was removed for "neglectful supervision . . . due to the ongoing drug use."

The father, who also had a history of using drugs, refused to submit to a hair follicle test. The father admitted at trial that he had used methamphetamine while this case was pending and that he had used methamphetamine on an off for at least ten years. The father told the conservatorship caseworker that, "periodically," he has known both the mother and the maternal grandmother to have drug and alcohol problems. At trial, the father initially testified that he first became aware of the mother's and the maternal grandmother's drug usage on the day that G.L.O. was removed from their care. He later testified that he knew the mother used methamphetamine and that he had used it with her.

The Department's conservatorship caseworker, Misty Apala, testified that neither parent completed the family service plan. The mother was unable to complete her services due to her incarceration. On February 27, 2012, the mother pleaded guilty to manufacturing or delivering a controlled substance and was sentenced to a term of confinement for sixteen years. The offense for which the mother pleaded guilty had occurred in June 2011—before G.L.O.'s removal. The mother testified that she and her mother had used methamphetamine while they were responsible for G.L.O.

Apala testified regarding the requirements of the father's service plan and his failure to meet those requirements. The father had little involvement with G.L.O. prior to and during the pendency of this case. The father visited G.L.O. only three times in fourteen months. The father failed to participate in any counseling sessions, refused to submit to a hair-follicle drug test, failed to complete a parenting class, and failed to regularly visit G.L.O.

The record also shows that G.L.O. has significant mental and behavioral issues, including ADHD, a mood disorder, violent behaviors, and depressive behaviors. He has been known to injure himself and to attack others. He also has ongoing issues with defecating in his pants and playing in the feces. At the time of

trial, G.L.O. was placed at Timberlawn Behavioral Health Unit. Although he had earlier expressed a desire to return to his maternal grandmother's home, G.L.O. subsequently stated that he did not wish to return home.

Apala testified that it would be in G.L.O.'s best interest to terminate the mother's and the father's parental rights and to appoint the Department as G.L.O.'s managing conservator. According to Apala, G.LO. needs permanency. Apala testified that there are appropriate and specially trained foster parents that would be a suitable placement for G.L.O. and that G.L.O., with consistency in his life and the right medication, would "very much [be] an adoptable child." In its termination order, the trial court appointed the Department as G.L.O.'s managing conservator but ordered the Department to make reasonable efforts to place G.L.O. with the intervenors in this case: the maternal grandfather and his wife.

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father had allowed G.L.O. to remain in conditions or surroundings that endangered his physical or emotional well-being. Apala testified that the father told her that he was aware that both the mother and the maternal grandmother "periodically" had problems with drug and alcohol abuse. Despite this knowledge, the father allowed G.L.O. to continue living with the mother and the maternal grandmother. Apala testified that a child who lives in a household with caregivers who use methamphetamine is in danger because methamphetamine use increases aggression and tension and makes people disoriented, paranoid, irrational, and violent. We hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(D). *See id.* The father's second issue is overruled.

The Department also produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father failed to comply with the provisions of his family service plan as ordered by the trial court,

5

that G.L.O. had been in the Department's care for at least nine months, and that G.L.O. had been removed from his parents due to "abuse or neglect" as required by Section 161.001(1)(O). In the context of subsection (O), "abuse or neglect" can be read to include "risk." *In re E.C.R.*, 402 S.W.3d 239, 246–49 (Tex. 2013). Furthermore, even though G.L.O. was not removed from the father's home and was not removed as a result of allegations of abuse or neglect made specifically against the father, the father was still required to comply with subsection (O). *In re D.R.A.*, 374 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The parent who fails to comply with a court order as required by subsection (O) need not be the same person whose abuse or neglect triggered the child's removal. *In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.). We hold, therefore, that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O). The father's third issue is overruled.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's and the father's parental rights would be in the best interest of G.L.O. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the history of drug use by the parents and the maternal grandmother, the extended incarceration of the mother, the conduct of the mother, the programs available to assist in the care of G.L.O., and the plans for the child as set out in the trial court's final order, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the mother's and the father's parental rights is in the best interest of G.L.O. *See id.* We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. The mother's sole issue and the father's fourth issue are overruled.

6

*Trial Amendment*

With respect to the father's first issue, the record shows that, after trial had commenced and over the father's objection, the trial court permitted the Department to amend its pleadings to add an allegation that the father had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child. The trial amendment was based on evidence that had been admitted at trial without objection. Upon granting the Department's request for a trial amendment, the trial court also granted a fifteen-day continuance to allow the parents a reasonable time to respond and prepare for trial based on the amended pleadings.

TEX. R. CIV. P. 66 authorizes a trial court to allow a party to amend its pleadings during trial. A trial court has discretion to permit trial amendments under Rule 66, but it has no discretion to refuse a trial amendment absent surprise or prejudice. *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990). Additionally, TEX. R. CIV. P. 67 provides that issues not raised by the pleadings, but tried by consent, shall be treated as if they had been raised in the pleadings. The record in this case shows that, prior to trial, the father was aware that he was required to comply with the trial court's order and the family service plan. Furthermore, evidence regarding the father's failure to comply with subsection (O) had been introduced without objection, and the trial court postponed the trial in order to give the father a reasonable time to prepare for trial under the amended pleadings. Under these circumstances, we cannot hold that the trial court abused its discretion when it permitted the Department to amend its pleadings to add an allegation under subsection (O). The father's first issue is overruled.

*This Court's Ruling*

We affirm the trial court's order of termination.


JOHN M. BAILEY

JUSTICE


January 9, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.