**Opinion filed May 7, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00300-CV

_____

## IN THE INTEREST OF B.J.L., A CHILD

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-3347-PC**

## MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the mother and father of B.J.L. The mother timely filed an appeal. In one issue on appeal, she challenges the legal and factual sufficiency of the evidence to support termination. We affirm.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational

trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed four of the acts listed in Section 161.001(1)—those found in subsections (D), (E), (N), and (O). Specifically, the trial court found that the mother had knowingly placed or knowingly

allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; that the mother had constructively abandoned the child; and that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the child. The mother challenges each of the trial court's findings in her sole issue on appeal.

*Evidence Presented*

The record shows that the Department first became involved with the family when the child was seven months old. While in his mother's care, the child suffered third-degree burns all over his body when the mother spilled a hot pot of Ramen noodles. As a result of this incident, the father was given sole managing conservatorship of the child, and the mother was granted possessory conservatorship with supervised visitation. In October 2013, when the child was two years old, the Department again became involved with the family. The police were called to the father's residence after the father brandished a weapon, took the child into a bedroom, and threatened to shoot himself. Law enforcement notified the Department. The Department's investigator, Cyndi Perez, testified that she arrived at the house while the police were still there. Perez was concerned for the child's safety. She observed lots of drugs and weapons in the home and garage. The drugs included cocaine, methamphetamine, and numerous types of pills. Perez also observed rotten food, razor blades, and broken glass in the home and garage. B.J.L.

3

was extremely hyper and was running around like he "couldn't control his movements." Perez testified that drugs and weapons were accessible to the child and that the father "was making" methamphetamine. A police officer also noted the presence of a large amount of drugs, including cocaine and methamphetamine that were contained in "numerous different packaging," and of various loaded guns. Results of a subsequent hair follicle test conducted on the child came back positive for cocaine and methamphetamine.

The child was removed and subsequently placed with a paternal aunt. Perez testified that the child was not placed with the mother based upon various concerns, including the prior court order that required the mother's visits with the child to be supervised. Perez was also concerned about the mother's mental health. During the mother's interview with Perez, the mother at times would turn her head and talk as if she were carrying on a conversation with somebody else, but there was nobody else there except for the mother and Perez. The mother did not comprehend the questions asked by Perez regarding supervised visitation. She misinformed the Department about her employment, and she did not have stable housing.

The mother's main concern at the time of her interview with Perez seemed to be about the father, not about B.J.L. A licensed professional counselor who assessed the mother and had four other sessions with the mother described the mother's overall attitude as lackadaisical. The counselor testified that the mother had a history of poor judgment and poor impulse control. This history was exemplified by the mother's criminal history, which included two convictions for theft, a conviction for forgery by passing, a conviction for credit card abuse, and an incarceration for domestic violence. The mother was incarcerated at the time of trial. Additionally, the mother told the counselor that both physical and emotional abuse were present throughout the entire relationship between the mother and the father. The mother was aware of the father's drug use and irresponsible behavior.

4

The trial court ordered the mother to participate in various services that were necessary for her to obtain the return of her child. The evidence at trial showed that the mother did not complete the court-ordered services and, thus, failed to comply with the trial court's order. The mother failed to complete counseling, failed to maintain stable housing, failed to maintain stable employment, and failed to complete the Safe Place program.

The Department's goal for the child was termination of the parental rights of both parents and adoption by a relative. The conservatorship caseworker, the paternal aunt, and a Department supervisor testified that termination of the mother's parental rights would be in the best interest of the child. The child's guardian ad litem agreed that termination of the mother's parental rights would be in the child's best interest. The paternal aunt, with whom the child had been placed, had a close bond with the child and wanted to adopt him. The paternal aunt's home was stable, and the Department agreed that the child should remain with the paternal aunt on a permanent basis. During the mother's visits with the child, it was observed that the child did not have a bond with his mother, that he was attached to his aunt, and that he wanted to be with his aunt.

*Analysis*

The record contains clear and convincing evidence that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child who had been in the conservatorship of the Department for more than nine months and had been removed due to abuse or neglect. The mother asserts on appeal that she completed many services prior to her incarceration and that the child was removed due to the father's abuse or neglect, not the mother's, because the father had custody of the child at the time of removal.

5

The evidence is undisputed that the mother failed to complete counseling, complete the Safe Place program, maintain stable housing, or maintain stable employment as required by her family service plan and ordered by the trial court. Section 161.001(1)(O) does not "make a provision for excuses" for the parent's failure to comply with the court-ordered services. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)) (internal quotation marks omitted). Clear and convincing evidence also reflected that the child had been removed due to abuse or neglect and that the child had been in the care of the Department for well over nine months. Furthermore, even though the child was not removed from the mother's home and was not removed as a result of allegations of abuse or neglect made specifically against the mother, the mother was still required to comply with subsection (O). *In re D.R.A.*, 374 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The parent who fails to comply with a court order as required by subsection (O) need not be the same person whose abuse or neglect triggered the child's removal. *In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.). Consequently, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O).

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required and because we have held that the evidence is sufficient to support the trial court's finding under subsection (O), we need not address the mother's complaints in which she challenges the findings made pursuant to subsection (D), (E), and (N). *See* TEX. R. APP. P. 47.1.

The mother also challenges the finding that termination of her rights would be in the best interest of her child. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be

in the best interest of the child.  *See Holley*, 544 S.W.2d at 371–72.  Upon considering the record as it relates to the desires of the child, as shown through the lack of bonding with the mother and the observations made at visitation; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the mother and the person seeking to adopt the child; the plans for the child by the Department; the instability of the mother's home; the stability of the child's placement; the mother's mental health issues; the mother's criminal history; and the acts and omissions indicating that the parent-child relationship was not a proper one, we hold that the evidence is sufficient to support the finding that termination of the mother's parental rights is in the best interest of the child.  *See id.*  The mother's sole issue on appeal is overruled.

*This Court's Ruling*

We affirm the trial court's order of termination.

JOHN M. BAILEY
JUSTICE

May 7, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.