

# NUMBER 13-16-00062-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**In the Interest of J.D., a Child**

**On appeal from the 267th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Longoria
Memorandum Opinion by Justice Longoria**

Appellant D.T. challenges the trial court's order terminating her parental rights to J.D., her minor daughter.[1] By three issues, D.T. claims that: (1) her due process rights were violated during the proceedings; (2) the evidence was legally and factually insufficient to support termination based on constructive abandonment; and (3) the

---

[1] We refer to family members by their initials to protect J.D's identity. *See* TEX. R. APP. P. 9.8(b).

evidence was legally and factually insufficient to find that termination was in J.D.'s best interest. We affirm.

## I. BACKGROUND

J.D. is the eleven-year old daughter of D.T. (mother) and M.D. (father). In 2008, the Texas Department of Family and Protective Services ("the Department") found that it would be unsafe for D.T.'s children to remain with her and M.D. After a hearing, J.D. and D.T.'s two other children from another relationship were placed into foster care because of "negligence/abuse" on the part of D.T. In 2009, the trial judge ordered that fictive kin Bridget Lang be appointed sole managing conservator of J.D., with D.T. and M.D. as possessory conservators. D.T. was ordered to pay child support, and could visit J.D., but only at Lang's "discretion." M.D. testified that at some point afterward, Lang surrendered J.D. back into his care. J.D. lived with her father until 2015.

In January 2015, the Department became involved with J.D. again when M.D. came under investigation for physical abuse towards J.D. At the time, M.D. was also being investigated for sexual abuse allegations made by his sixteen-year old niece and for various other criminal activities. While M.D. was being investigated for the sexual abuse allegations, the investigators noticed that J.D. had cuts on her face and bruises and belt marks all over her body. J.D. made an outcry statement to the investigator that M.D. beat her, causing the injuries, and that he had done this to her several times in the past. On February 9, 2015, the Department filed a petition to have J.D. temporarily removed from M.D.'s home. She was placed with her grandmother, M.S., whom J.D. continues to live with today. When the Department filed its petition, it stated that the location of D.T. was unknown and that D.T. would be served when her location was

2

discovered. D.T. was served the next month at her new address in Ohio, where she had been reportedly living for several years. She continued to receive notifications from the court at this new address. However, she was not appointed legal counsel at this time. M.D., by contrast, was appointed legal counsel three days after the Department filed its petition.

In April of 2015, the trial court held a status hearing and created a family service plan for D.T. and M.D. to help them regain custody of J.D., but D.T. did not appear at the hearing. On August 14, 2015, the trial court held a permanency hearing and appointed legal counsel for D.T. Again, she did not appear at the hearing. On September 22, 2015, D.T.'s legal counsel filed a motion to withdraw because of a conflict of interest: he was an associate of the law firm that also represented M.D. On October 13, 2015, three months before trial started, D.T. was appointed new legal counsel. In December 2015, the trial court held another permanency hearing; D.T.'s counsel appeared, but D.T. did not. At this time, M.D. filed an affidavit stating his desire to voluntarily relinquish his parental rights in regard to J.D.

In January 2016, the Department filed its original petition seeking to terminate D.T.'s and M.D.'s parental rights. The trial court denied D.T.'s motion to appear at the trial by telephone as opposed to appearing in person. However, D.T.'s counsel was present at the trial. M.D. was bench warranted from possession of the Texas Department of Criminal Justice—Institutional Division so that he could personally appear at the trial. At the trial later that month, he testified that from the time of the 2009 foster placement to the present that D.T. met with J.D. only once in 2012 in San Antonio, according to his own knowledge and contact with both J.D. and D.T. He also mentioned that D.T. tried

contacting him through Facebook a few times to arrange a chat with J.D., but other than those instances, he testified that D.T. has essentially been an absent mother in J.D.'s life. He also alleged that D.T. has not made any of her court-ordered child support payments.

Michelle Camacho is a caseworker for the Department. She testified at the trial that it was in J.D.'s best interest to have D.T.'s parental rights terminated because she had no bond with J.D. Camacho testified that M.S. has been taking care of J.D. for over a year and was doing a good job of it. Camacho states that the Department plans to have M.S. adopt J.D. because only she can provide J.D. with "permanency and stability." Camacho could not recall D.T. ever contacting her concerning visitation with J.D. However, Camacho did testify that D.T. claimed in 2015 that she would come to Texas to establish a relationship with J.D. As far as Camacho knows, this never occurred. Even though D.T. claims that she participated in services in Ohio to comply with the family service plan, Camacho testified that she never received any documentation on her compliance. Camacho tried contacting D.T.'s caseworker in Ohio several times, but the caseworker in Ohio never answered the phone or returned Camacho's calls.

David Braune is a licensed professional counselor who provides services for the Department. He had been working with J.D. for over six months to help her deal with some behavioral issues stemming from the abuse she has suffered. He admitted that J.D. had an "unreasonable idea" of being able to live with her mother that she has essentially never met (J.D. was only two or three years old when she lived with D.T.). But he then testified that it would not harm J.D. to terminate D.T.'s parental rights because the two essentially have no relationship and it is important for a child such as J.D. to have permanency. In his opinion, terminating D.T.'s parental rights would prevent her from

"actually having any more harm brought to her." He asserted that "the effort wasn't really put forth" on D.T.'s behalf over the years to establish a bond with J.D. He also testified that M.S. was taking good care of J.D. and could provide the support J.D. needed. Furthermore, J.D. has told Braune that she loves M.S. and feels safe staying with her.

Michelle Haycock is a CASA volunteer who has been involved with J.D. She testified that even though adoption was not specifically brought up with M.S. and J.D., they have discussed long-term living arrangements. According to Haycock, J.D. says she wants to live with M.S. "permanently" because she is happy there.

Based on the above testimony and the affidavit submitted by M.D., the trial court entered an order terminating both D.T. and M.D.'s parental rights to J.D. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O) (West, Westlaw through 2015 R.S.). This appeal ensued.[2]

## II. DUE PROCESS

By her first issue, D.T. claims that her due process and equal protection rights were violated both by the Department and the trial court. More specifically, D.T. argues that her rights to due process and equal protection rights were violated in four ways: (1) the trial court failed to timely appoint her counsel; (2) D.T. was not notified of the permanency hearings; (3) the Department did not assist D.T. in obtaining services in Ohio to comply with her family service plan; and (4) the trial court denied D.T.'s motion to participate in the trial via telephone.

### A. Standard of Review

---

[2] M.D. is not a party to this appeal.

In general, an objection must be timely raised before the trial court to be preserved for appeal. *See* TEX. R. APP. P. 33.1. This is also true for constitutional objections: "[c]onstitutional issues must be properly raised in the trial court or they are waived on appeal." *In re M.J.M.L.*, 31 S.W.3d 347, 352 (Tex. App.—San Antonio 2000, pet. denied). Even more specifically, parties in parental termination cases are held to the same standard and parties must object at the trial court level to properly preserve issues for appeal. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (observing that "applying our preservation rules" generally does not deprive parties of their due process rights in parental termination cases); *see also In re C.L.B.*, No. 10-13-00203-CV, 2014 WL 702798, at *1 (Tex. App.—Waco Feb. 20, 2014, no pet.) (mem. op.).

## B. Discussion

At no point before, during, or after the trial did D.T. raise an objection based on the above deprivations of her due process rights. At the beginning of the trial, D.T.'s attorney stated that she was ready to commence the trial and did not ask for a continuance. During trial, no objections were made regarding her due process claims. And D.T. did not raise due process concerns in her motion for new trial, either. The only argument that J.D. raised in her motion for new trial is that "she did not willfully disregard this court's orders but rather did not have the financial means to fully participate in her defense." To support this claim, J.D. referenced the trial court's denial of her motion to participate in the trial by telephone. Of her four due process sub-issues, this is the closet J.D. came to preserving one for appeal. Nevertheless, D.T. did not argue in her motion for new trial that it was an error for the trial court to deny her telephonic appearance. To the contrary, in her motion for new trial, she simply cited the trial court's denial of her motion for telephonic

appearance as an explanation for her absence from the trial. We hold that she failed to preserve this issue. *See* TEX. R. APP. P. 33.1. However, even if we were to liberally construe this as a properly preserved due-process objection, she would not prevail on this sub-issue.

A trial court's ruling on a party's request to participate at trial by alternate means is reviewed for an abuse of discretion. *In re Z.L.T.,* 124 S.W.3d 163, 165 (Tex. 2003). Courts have held that parents do not have an absolute right to appear telephonically in termination cases. *See In re C.P.V.Y.*, 315 S.W.3d 260, 270 (Tex. App.—Beaumont 2010, no pet.). In that case, a parent claimed that his due process rights were violated because the trial court denied his request to appear telephonically at the termination hearing. *See id.* However, the Beaumont Court of Appeals held that the parent did not properly preserve his issue for appeal. *See id.* Furthermore, even if he had properly preserved the issue, the Court of Appeals held that there was no error regardless because the parent did not offer any evidence as to why his presence via telephone was necessary or why his counsel would be unable to adequately represent him without his telephonic presence. *See id.* The parent merely stated that he lived far away.

Likewise, in the current case, J.D. stated in her motion for new trial that her lack of finances and living in Ohio were the reasons for not appearing at trial but she offered no reasons as to why her telephonic presence was required or why her counsel would be unable to adequately represent her unless she was allowed to appear telephonically. Thus, even if we were to reach this issue, the trial court did not abuse its discretion in denying her motion to appear telephonically. *See id.*

7

We conclude that D.T. failed to present her due process objections to the trial court and has thus failed to preserve the issue for appeal. *See In re M.J.M.L.*, 31 S.W.3d at 352*;* TEX. R. APP. P. 33.1. We hold that even if the issue was preserved, she would not prevail. We overrule D.T.'s first issue.

### III. LEGAL AND FACTUAL SUFFICIENCY

In her second and third issues, D.T. argues that the evidence was legally and factually insufficient to establish: (1) constructive abandonment and failure to complete the court-ordered family service plan (issue two); and (2) that termination is in J.D.'s best interest (issue three).

### A. Standard of Review

"Parental rights may be terminated only upon proof of clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and that termination is in the best interest of the child." *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2015 R.S.).

When the legal sufficiency of the evidence is challenged in a parental termination case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Accordingly, we assume the finder of fact resolved all disputed facts in favor of its verdict, if a reasonable fact-finder could do so, and likewise we disregard all evidence that a reasonable factfinder

8

could have disbelieved. *Id.* When factual sufficiency is challenged in a parental termination case, then we also consider the conflicting evidence. *Id.* If the disputed evidence is so "significant" that a reasonable factfinder could not form a firm belief of the findings supporting the verdict, then the evidence is factually insufficient. *Id.*

## B. Statutory Grounds for Termination

In the present case with the Department, the trial court declared in its order that it found by clear and convincing evidence that it was in J.D.'s best interest to terminate D.T.'s parental rights. Furthermore, the court found by clear and convincing evidence that D.T.

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother has demonstrated an inability to provide the child with a safe environment pursuant to § 161.001(b)(1)(N), Texas Family Code;

> failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect of the child, pursuant to § 161.001(b)(1)(O), Texas Family Code[.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). Thus, the trial court terminated D.T.'s parental rights based off of both constructive abandonment and failure to comply with the family service plan.

### 1. Constructive Abandonment

D.T. complains in her second issue that the Department did not provide legally and factually sufficient evidence to prove that she constructively abandoned J.D.

Constructive abandonment under subsection 161.001(b)(1)(N) has four elements: (1) the Department had permanent or temporary conservatorship of the child for at least six months; (2) the Department made reasonable efforts to return the child to the parent; (3) the parent did not regularly visit or maintain significant contact with the child; and (4) the parent demonstrated an inability to provide the child with a safe environment. *See id.* § 161.001(b)(1)(N). D.T. specifically complains that the Department failed to provide any evidence of elements two and four.

However, under the second element, "[r]eturning the child to the parent, per section 161.001(1)(N)(i), does not necessarily mean that the child has to be physically delivered" to the individual. *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). In fact, courts have previously held that the reasonable-effort-to-unite-the-parent-and-child prong can be satisfied by preparing and administering a service plan. *See In re K.M.B.*, 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.). The trial court heard evidence of the Department preparing and administering D.T.'s service plan, and D.T. was informed that reunification with J.D. would be possible if she complied with the family service plan. Caseworkers maintained contact with D.T. in Ohio. Camacho testified that D.T. failed to complete any of the tasks or goals set therein. Therefore, a reasonable factfinder could have formed a firm conviction that the Department made reasonable efforts to return J.D. to D.T. *See In re K.M.B.*, 91 S.W.3d at 25.

D.T. also argues that the Department failed to prove element four. D.T. claims that the record does not establish that she demonstrated an inability to provide the child with a safe environment. There are several factors to indicate a parent's willingness and ability to provide the child with a safe environment:

10

the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities.

*In Interest of M.R.J.M.*, 280 S.W.3d 494, 506 (Tex. App.—Fort Worth 2009, no pet.). The trial court heard evidence that D.T. had not sought counseling as required by her family service plan. D.T. claims that she was meeting with a counselor in Ohio, but failed to send any documentation to verify her claim. Evidence established that D.T. failed to make her child support payments and only made minimal, occasional monetary contributions to the care of J.D. By living away from the child for years, failing to make child support payments, failing to seek out and accept counseling services, and failing to even maintain contact with J.D., the trial court could have reasonably concluded that D.T. failed to provide J.D. with a safe environment. *See id.* Therefore, the trial court could have formed a firm belief that D.T. constructively abandoned J.D., and the disputed evidence is not so significant that a reasonable fact-finder could not form a firm belief of this finding. *See In re J.O.A.*, 283 S.W.3d at 344.

### 2. Failure to Comply with Family Service Plan

D.T. never directly challenges the court's subsection (O) finding. As part of her due process issue, D.T. generally asserts as a defense for her failure to complete the service plan that the Department never helped her complete the family plan. Furthermore, D.T. claims that it was because of M.D.'s abuse, not hers, that J.D. was removed from their custody. We will very liberally construe D.T.'s argument to constitute

11

a challenge to the sufficiency of the evidence supporting the trial court's subsection (O) finding.

> Subsection 161.001(b)(1)(O) allows for termination if the parent
>
> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). This does not require the parent who failed to comply with a court order be the same parent whose abuse warranted the child's initial removal. *See In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.); *In re S.N.*, 287 S.W.3d 183, 187–89 (Tex. App.—Houston [14th Dist.] 2009, no. pet.). In other words, it does not matter that J.D. was initially removed because of M.D.'s physical abuse and not D.T.'s. D.T. still failed to comply with the family service plan established by the trial court. *See In re S.N.*, 287 S.W.3d at 187.

D.T.'s claim that the Department did not assist her in completing her family service plan is also without merit. Subsection 161.001(b)(1)(O) contains no provision allowing for parents to provide excuses for failing to complete court-ordered services. *See In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied). Therefore, the trial court could have formed a firm belief that termination was also proper under subsection 161.001(b)(1)(O) because J.D. was removed from custody due to abuse of one of the parents and D.T. failed to complete her family service plan. Furthermore, the disputed evidence is not so significant that a reasonable fact-finder could not form a firm belief of this finding. *See In re J.O.A.*, 283 S.W.3d at 344.

### 3. Summary

The Department only needed to prove one ground for termination. *See In Interest of M.R.J.M.*, 280 S.W.3d at 502. But we conclude that the trial court could reasonably form a firm belief that the Department proved the necessary elements of both subsections 161.001(b)(1)(O) and 161.001(b)(1)(N). Therefore, we overrule D.T.'s second issue.

## C. Best Interest

In her third issue, D.T. argues that the Department failed to provide legally and factually sufficient evidence that termination was in J.D.'s best interests. While D.T. admits that some factors may point in favor of termination, she argues the evidence taken in whole failed to prove by clear and convincing evidence that termination was truly in J.D.'s best interest.

In reviewing a best interest finding, we consider the non-exclusive *Holley* factors. *See In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). These factors include: (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

The record established that J.D. is happy with her grandmother and wishes to stay with her. Camacho and Braune both testified that J.D. requires a home with stability and

13

permanency to help her with her developmental needs, both physically and emotionally. They both testified that J.D.'s grandmother was currently providing the kind of environment that she needed. The record clearly established that D.T. has been absent for the majority of J.D.'s life and essentially has no bond or relationship with J.D. Programs had been made available to D.T., but the evidence suggests that she did not take advantage of them or properly inform the Department of what services she was allegedly seeking. Likewise, despite living away from J.D. for years, testimony from M.D. and the caseworker indicated that D.T. showed little motivation in actually contacting or establishing a connection with J.D.

In addition, Camacho testified that D.T. was also involved with the child protection agency in Ohio because of her other children. The Department hopes to be able to place J.D. permanently with her grandmother, which would require terminating both M.D.'s and D.T.'s parental rights. Braune testified that terminating D.T.'s interests would cause no harm to J.D. because the two have no relationship. There was no evidence of D.T.'s future plans for a permanent home or any other plans for long-term stability. D.T. has mentioned several excuses for her acts, such as her financial inability to travel to Texas and the Department's failure to help her complete the service plan. However, given all of the above evidence, the trial court could have reasonably formed a firm belief that terminating D.T.'s parental rights were in J.D.'s best interests; in addition, the disputed evidence is not so significant that a reasonable fact-finder could not form a firm belief of this finding. *See In re J.O.A.*, 283 S.W.3d at 344. D.T.'s third issue is overruled.

14

**D. Summary**

In summary, D.T. failed to preserve her due process issues for appeal. Additionally, the Department provided both legally and factually sufficient evidence to prove that termination is proper under both subsections 161.001(b)(1)(O) and 161.001(b)(1)(N), given D.T.'s complete absence from J.D.'s life, D.T's failure to maintain contact with J.D., and D.T's failure to comply with the family service plan. Furthermore, the Department provided legally and factually sufficient evidence to show that termination is in J.D.'s best interest.

## IV. CONCLUSION

We affirm the trial court's judgment.

NORA LONGORIA,
Justice

Delivered and filed the
26th day of May, 2016.