**Opinion issued July 14, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00805-CV

———————————

## IN THE INTEREST OF A.L.W. AND A.N.W., MINOR CHILDREN

---

### On Appeal from the 313th District Court
### Harris County, Texas
### Trial Court Case No. 2013-05425J

---

## MEMORANDUM OPINION

Following a bench trial, the trial court signed a judgment terminating the parent–child relationship between A.L.T ("Mother") and her two minor daughters: A.L.W. and A.N.W. On appeal, Mother presents five issues. She asserts that the evidence was not legally or factually sufficient to support the trial court's

judgment, and she claims that she received ineffective assistance of counsel in the trial court.

We affirm.

## Background

On October 2, 2013, the Department of Family and Protective Services ("the Department") filed suit, requesting the trial court to issue temporary orders appointing the Department the temporary sole managing conservator of A.N.W. and A.L.W. If family reunification could not be achieved, the Department sought to terminate Mother's parental rights to her children. The Department offered the affidavit of Alyssa Martin to support its petition.

In her affidavit, Martin stated that, on October 1, 2013, the Department had received a referral regarding the "physical abuse" of two sisters: 12-year-old A.N.W. and 11-year-old A.L.W. The report stated that, the previous day, A.N.W. had refused to get off the school bus because she was afraid to go home. A.N.W. had reported that her step-mother had been abusing her and A.L.W. A.N.W. reported that her step-mother had hit her and A.L.W. with an extension cord and with a switch. It was also reported that the step-mother had hit A.L.W. with a closed fist, giving her a bloody lip, and had yanked A.L.W.'s hair so hard that she had pulled it from A.L.W.'s head. According to A.N.W., the step-mother had told the girls that, if they reported the abuse to anyone, she would "hurt them worse."

2

A.N.W. also reported that her father had choked her and had thrown her against the wall as punishment for not adequately watching her younger siblings.

Martin testified in her affidavit that numerous old and new injuries could be observed on the girls' bodies. A.L.W. had scars on her thigh and hip from being hit with a switch by the step-mother. A.L.W.'s skin appeared to have been broken. A.L.W. had a bald spot on her scalp where the step-mother had pulled out her hair. Martin stated that A.L.W. had also been observed with a swollen, bloody lip.

A.N.W. was observed to have a half-dollar sized purple bruise and one-half inch cut over her right eye. On her arm, she had a six-inch-wide welt "with a black coating on it from the extension cord" used by the step-mother to hit her. A.N.W. also had 15 marks up and down her legs. Some marks were purple and appeared to be recent injuries that were healing; others appeared to be old injuries.

Martin further stated in the affidavit that A.N.W. had reported that she and A.L.W. had been living in Chicago, where their biological mother lived. A.N.W. told Martin that her father had brought her and A.L.W. from Chicago to Houston for a summer visit in May 2013. However, the father did not return the girls to Chicago. A.N.W. reported that she and her sister had been permitted to speak to their mother only once since they had left Chicago.

Martin also stated that the step-mother had reported that A.N.W. and A.L.W. were living with her and their father because Mother had been abusing the

3

children.  The step-mother stated A.N.W. and A.L.W. had "special needs."  She also claimed that "[A.N.W. and A.L.W.] don't know what they were talking about."

On October 2, 2013, the trial court signed an emergency order for the protection of A.N.W. and A.L.W.  The order identified Mother and the girls' father as the parents of A.N.W. and A.L.W. and as respondents in the order.

In the order, the trial court found that A.N.W. and A.L.W. had been removed pursuant to Family Code section 262.104, which authorizes possession without a court order if circumstances would lead a person of ordinary prudence and caution to believe that the child faced "an immediate danger to [his] physical health or safety."[1]  The court also found that the children faced a continuing danger to their physical health or safety if returned to "the parent."  The trial court appointed the Department as the temporary managing conservator of the children.

On October 16, 2013, the trial court conducted a full adversary hearing at which Mother appeared.  That same day, the court signed a temporary order.  Again, Mother was identified in the order as the children's mother.  In the order, the trial court found sufficient evidence to satisfy a person of ordinary prudence

---

[1]      Section 262.104 was amended in 2015, but the quoted language was unaltered. *See* Act of Mar. 30, 2015, 84th Leg., R.S., S.B. 219, art. 1, § 1.157, sec. 262.104(a)(1) (West, Westlaw through 2015 R. Sess.).

and caution that the children faced a continuing danger to their physical health or safety if the children were returned home:

> (1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession and for the children to remain in the home is contrary to the welfare of the children; (2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children are returned home.

The order also ordered Mother to comply with the requirements of the Department's service plan. The order notified Mother that any failure to comply with the service plan could result in the termination of her parental rights.

The Department prepared a family service plan and filed it with the trial court on November 12, 2013. The plan set out several tasks and services for Mother to complete before reunification with her children.

The trial court conducted a status hearing on November 20, 2013. Mother and her court-appointed counsel attended the hearing. That same day, the trial court signed a status hearing order, which approved and incorporated the service plan by reference. The order stated that Mother had reviewed the service plan and understood it. The order reflected that Mother had been warned that her non-compliance with the service plan could result in the termination of her parental rights.

On February 12, 2014, the Department filed a permanency plan and progress report with the trial court. Under the heading "parental progress," the Department caseworker, Cherena Mills, wrote, "[Mother] is currently living in Chicago, Illinois. [Mother] has not been in contact with caseworker. [Mother's] phone number is currently disconnected. It is not known if [Mother] has started or completed services at this time."

The trial court conducted a permanency hearing on February 19, 2014. Although her attorney appeared, Mother did not appear at the hearing. The trial court signed a permanency order, providing,

> IT IS ORDERED that, except as specifically modified by this order or any subsequent order, the permanency plans for the children, set out in the service plans and/or Permanency Progress Reports filed with the Court, are approved and adopted by this Court and incorporated herein as if set verbatim in this order. The actions specified in each service plan and/or Permanency Progress Report on file as of the date of this order represent actions which this Court requires of the parent specified in the service plan and/or Permanency Progress Report and the actions much be performed in order for the parent to regain custody of the children who are presently in the temporary managing conservatorship of the Department.

The order also provided "that all previous orders issued by this Court shall continue without modification."

The trial court conducted another permanency hearing on June 11, 2014. Again, Mother's attorney appeared at the hearing, but she did not appear.

The Department filed another permanency plan and progress report with the trial court on September 2, 2014. In the plan caseworker Cherena Mills stated,

> [Mother] is allegedly living in Iowa. [Mother] did not inform caseworker she had moved to Iowa. Caseworker was told by paternal grandmother. Caseworker obtained mother's updated phone number from paternal grandmother. [Mother] has not been in contact with caseworker consistently. [Mother] has stated she completed her parenting classes but caseworker has yet to receive the certificate. It is unknown if [Mother] has started or completed any other services at this time.

The Department pursued termination of the parent–child relationship between Mother and her two daughters, A.N.W. and A.L.W. On September 2, 2014, the suit was tried to the bench. Mother did not appear at trial. At the start of trial, Mother's counsel orally requested a continuance. Counsel stated that Mother had moved to Iowa and was working there. He informed the trial court that Mother had told him that she thought trial was the following month. Counsel stated,

> [Mother's] number is one of the numbers that changes all the time, quite frequently. I'm sure the Court has dealt with that in the past. I asked CPS last week for updated phone numbers. After reasking this morning, I was provided, then called her this morning. And my client informed me that she has progressed a little further in her plan than what CPS believes. And she sent them to CPS, and CPS said they had not gotten a copy of the information.

The trial court denied the motion for continuance.

With regard to Mother's trial attendance, caseworker Cherena Mills testified that she had spoken with Mother on August 20, 2014. She had informed Mother

7

that trial was set for September 2.  Mills testified that Mother had stated that she could not "make it [to trial] because of her job."

As it had alleged in its petition, the Department asserted at trial that the parent–child relationship between Mother and her two daughters should be terminated.  Among the grounds for termination, the Department relied on Mother's failure, in violation of Family Code subsection 161.001(l)(O), to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children.  More particularly, the Department sought to prove that Mother had failed to comply with the provisions of the service plan, the contents of which the trial court had incorporated into its November 20, 2013 status-hearing order.

When trial began, the trial court took judicial notice of the orders in its file.  To prove its allegations, the Department offered the testimony of caseworker Mills.  Her testimony indicated that Mother had failed to comply with the requirements of the service plan, except for one.  Mother had completed her parenting classes.  In addition, the trial court's orders showed that Mother had failed to attend the permanency hearings in February and in June, as had been required by the service plan.  Mills also testified that, at the beginning of the case, Mother had tested positive for illegal drug use in October 2013 and in November 2013.  With regard

8

to why termination was in the children's best interest, Mills testified that Mother has not shown the stability necessary to care for the children.

Mills also testified that A.N.W. and A.L.W. moved back to Chicago in May 2014 to live with their paternal grandmother. Mills testified that girls have lived most of their lives with their paternal grandmother. Although they have a relationship with Mother, A.N.W. and A.L.W. consider their grandmother to be their mother. Mills testified that the grandmother wants to adopt the two girls, and the two girls want to stay with their grandmother. Mills also stated that Mother had not consistently visited the children. Mother had visited her daughters at the end of July 2014. Before that, however, Mother had not visited the children for a long time.

The trial court rendered judgment terminating the parent–child relationship between Mother and her two children, A.N.W. and A.L.W. The trial court found that clear and convincing evidence showed (1) Mother had knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) she had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; (3) she had constructively abandoned the children; (4) she had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the

9

children; and (5) termination of her parental rights was in the children's best interest.[2] The trial court appointed the Department as sole managing conservator of the children.[3] Mother did not file a motion for new trial.

This appeal followed. Mother raises five issues challenging the trial court's decree terminating her parental rights.

### Sufficiency of the Evidence

In issues two through five, Mother claims that the evidence was not legally or factually sufficient to support the trial court's findings that she had committed a predicate act necessary for termination or to support the trial court's determination that termination was in the children's best interests.

### A.    Standard of Review

Termination of parental rights requires proof by clear and convincing evidence. Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1), 1997 Gen. Tex. Laws 2012, 2015 (amended 2015); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This heightened standard of review is mandated not only by the

---

[2]    Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(D),(E),(N),(O), (2), 1997 Gen. Tex. Laws 2012, 2015, *amended by* Act of Mar. 30, 2015, 84th Leg., R.S., S.B. 219, art. 1, § 1.078, sec. 161.001(b)(1)(D),(E),(N),(O), (b)(2) (West, Westlaw through 2015 R. Sess.). We note that the recent amendment to section 161.001 does not affect the resolution of Mother's appeal. The language of subsection (O) did not change; however, the subsections have been renumbered.

[3]    The trial court also terminated the parent–child relationship between the two girls and their father, based on his relinquishment of parental rights; however, he has not appealed the judgment.

Family Code but also by the Due Process Clause of the United States Constitution. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *see also Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S. Ct. 1388, 1394–95 (1982) (recognizing fundamental liberty interest parent has in his or her child and concluding that state must provide parent with fundamentally fair procedures, including clear and convincing evidentiary standard, when seeking to terminate parental rights). The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2014); *J.F.C.*, 96 S.W.3d at 264.

Here, the Department was required to establish, by clear and convincing evidence, that Mother's actions satisfied one of the grounds listed in former Family Code section 161.001(1) and that termination was in the children's best interest. *See* Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1), (2), 1997 Gen. Tex. Laws 2012, 2015 (amended 2015). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "Thus, if multiple predicate grounds are found by the trial court, we will affirm on any one ground because only one is necessary for

termination of parental rights." *In re G.A.A.*, No. 01–12–01052–CV, 2013 WL 1790230, at *7 (Tex. App.—Houston [1st Dist.] Apr. 25, 2013, no pet.).

When determining legal sufficiency, we review all the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the fact finder's conclusions, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved or found to have been not credible. *Id.* This does not mean that we must disregard all evidence that does not support the finding. *Id.* The disregard of undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* Therefore, in conducting a legal-sufficiency review in a parental-termination case, we must consider all of the evidence, not only that which favors the verdict. *See City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

In determining a factual-sufficiency point, the higher burden of proof in termination cases also alters the appellate standard of review. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* at 25. In considering whether evidence

rises to the level of being clear and convincing, we must consider whether the evidence is sufficient to reasonably form in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established. *Id.* We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

We give due deference to the fact finder's findings, and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

We are mindful that the natural rights that exist between parents and their children are of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Therefore, termination proceedings should be strictly scrutinized, and the involuntary termination statutes should be strictly construed in favor of the parent. *Id.* at 20–21; *see also In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). However, "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical

13

interests of the child not be sacrificed merely to preserve that right." *C.H.*, 89 S.W.3d at 26; *see also In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013).

## B.  Predicate Finding under Former Subsection 161.001(1)(O)

In her fourth issue, Mother asserts that the evidence was legally and factually insufficient to support the trial court's predicate finding that termination was warranted under former Family Code subsection 161.001(1)(O).  Termination of the parent-child relationship was permitted under Family Code section 161.001(1)(O) if the parent had

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who ha[d] been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Gen. Tex. Laws 2012, 2015 (amended 2015) (current version 161.001(b)(1)(O) (West, Westlaw through 2015 R. Sess.)).

### 1.    *Removal from parent under Chapter 262 for abuse or neglect*

Mother first asserts that the record does not show that the children were removed from her under Chapter 262 for abuse or neglect.  She asserts, "The allegations made in support of removal were based solely on allegations of abuse committed by [the step-mother] and [by their] father's neglect in failing to stop the abuse.  Therefore, no reasonable fact finder could form a firm belief of conviction

14

that the children were removed from [Mother] for abuse or neglect." At the same time, however, Mother acknowledges that courts have held that subsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect warranted the child's removal. *See In re D.R.J.*, 395 S.W.3d 316, 319–20 (Tex. App.—Fort Worth 2013, no pet.) ("[S]ubsection (O) does not require that the parent who failed to comply with a court order be the same person whose abuse or neglect of the child warranted the child's removal."); *In re D.R.A.*, 374 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that father was required to comply with all requirements of court-ordered service plan, even though child was neither removed from his home nor removed as result of allegations of abuse or neglect made specifically against him); *see also In re M.D.*, No. 10–13–00005–CV, 2013 WL 1558012, at *2 (Tex. App.—Waco Apr. 11, 2013, pet. denied) (mem. op.) (holding that a father was required to comply with the court-ordered service plan or be subject to termination under subsection (O) even though the children were removed as a result of abuse or neglect by the mother); *In re A.M.C.*, No. 09–12–00314–CV, 2012 WL 6061031, at *6 (Tex. App.—Beaumont Dec. 6, 2012, no pet.) (mem. op.) ("[T]he children need not be removed from the parent who failed to comply with the court order. . . . [B]y taking the children into its possession and

by obtaining an order for substitute care of the children after a full adversary hearing, the Department effectively removed the children from both parents.").

Chapter 262, titled "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child," details the circumstances under which a governmental entity may file a suit affecting the parent–child relationship or take possession of a child without a court order. *E.C.R.*, 402 S.W.3d at 247 (citing TEX. FAM. CODE ANN. § 262.001(a)). The statute provides that "[i]n determining the reasonable efforts that are required to be made with respect to preventing or eliminating the need to remove a child from the child's home or to make it possible to return a child to the child's home, the child's health and safety is the paramount concern." *Id.* (quoting TEX. FAM. CODE ANN. § 262.001(b)).

When it petitions for possession of a child without previous notice and a hearing, the Department must submit an affidavit stating "facts sufficient to satisfy a person of ordinary prudence and caution" that the child faces an immediate danger to his or her health or safety or that the child has been a victim of neglect or sexual abuse. *Id.* (citing TEX. FAM. CODE ANN. § 262.101). The affidavit must also state that the continuation in the home would be contrary to the child's welfare. *Id.* (citing TEX. FAM. CODE ANN. § 262.101). The trial court may issue a temporary restraining order only if it finds that one of those conditions has been satisfied. *Id.*

Within fourteen days after the Department has taken possession of the child, the trial court must hold a full adversary hearing. *Id.* (citing TEX. FAM. CODE ANN. § 262.201(a)). After the hearing, the trial court must order the child returned to his parent unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that (1) there was a danger to the child's physical health or safety that was caused by an act or failure to act of the person entitled to possession, and for the child to remain in the home is contrary to his welfare; (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the child's safety, were made to eliminate or prevent the child's removal; and (3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home. *Id.* (citing TEX. FAM. CODE ANN. § 262.201(b)). Continued removal is warranted only if the child faces a continuing danger to his physical health or safety. *Id.* (citing TEX. FAM. CODE ANN. § 262.201(b)–(c)).

Here, pursuant to Family Code section 262.201, the Department submitted an affidavit to support its request for "emergency orders" to obtain initial possession of A.N.W. and A.L.W. The affidavit explained that, on October 1, 2013, the Department received a referral, alleging physical abuse of A.N.W. and A.L.W.

An investigation by the Department revealed that, in May 2013, A.N.W. and A.L.W.'s father brought the girls from Chicago, where they and Mother lived, to Houston to live with him and the girls' step-mother. The investigation revealed that, while living with their father and step-mother, the girls had been beaten and subjected to other physical abuse by their step-mother. The caseworker providing the affidavit noted that the girls had visible marks, bruises, and abrasions on their bodies from old and new injuries.

The investigation also revealed that the step-mother had a history with the Department regarding neglect of her own children. It was further determined that the step-mother had prior criminal convictions for the offenses of aggravated assault and drug possession.

In addition, the affidavit stated that A.N.W. had reported that she and her sister came to Texas to spend the summer with their father; however, he did not return them to Chicago at the end of summer. A.N.W. also reported that she and A.L.W. had only spoken to Mother once during the four-month period they were in Houston. Although it was reported that the girls' father had taken them without Mother's consent, A.N.W. and A.L.W.'s step-mother reported, during the investigation, that the girls had come to live with her and their father because Mother had been abusing them. The step-mother had also stated that the children

18

had "special needs" and implied that the children were not telling the truth about the abuse by her.

Citing the affidavit, the trial court signed its "Order for Protection of a Child in an Emergency" on October 2, 2013. "This affidavit, even if not evidence for all purposes, shows what the trial court relied on in determining whether the initial removal was justified." *Id.* at 248. The order identified Mother as a parent of A.N.W. and A.L.W. and as a respondent to the action. In the order, the trial court found "there is a continuing danger to the physical health or safety of the children if returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian who was entitled to possession of the children." The trial court ordered Mother to provide certain information regarding the children to the Department.

As required by Family Code section 262.201, the trial court conducted a full adversary hearing fourteen days later on October 16, 2013. Mother appeared at the hearing. Following that hearing, the trial court signed a "Temporary Order Following Adversary Hearing." The trial court ordered the continued removal of the children. Mother was again identified as a parent of the children.

To support the continued removal, the trial court found, as required by Family Code section 262.201(b)), sufficient evidence to satisfy a person of ordinary prudence and caution that

(1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession and for the children to remain in the home is contrary to the welfare of the children; (2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children are returned home.

The order also notified Mother that she was required to follow the Department's service plan and warned her of the consequences of failing to follow the plan:

**11. Finding and Notice**

The Court finds and hereby notifies the parents that each of the actions required of them below are necessary to obtain the return of the children, and failure to fully comply with these orders may result in the restriction or termination of parental rights.

**12. Compliance with Service Plan**

12.1. [Mother] is ORDERED, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit.

To determine whether a child was removed from a parent under Chapter 262 for abuse or neglect, the Supreme Court of Texas has signaled that courts may rely not only on the Department's affidavit supporting initial removal but also on the trial court's unchallenged findings in the temporary orders.[4] *See E.R.C.*, 402

---

[4] Courts have held that such temporary orders may be challenged by seeking mandamus relief. *See In re E.C.R.*, 402 S.W.3d 239, 248 n.8 (Tex. 2013) (citing

S.W.3d at 248–49. Here, the temporary orders, authorizing the children's initial removal and their continuing removal, expressly applied to Mother. The orders not only removed the children from their father's possession but also from that of Mother. The temporary orders also required Mother to engage in certain conduct, including complying with the Department's service plan. Read in context, the trial court's findings in the temporary orders applied to Mother.

The unchallenged finding found in the temporary order, supporting the children's initial removal, states "there is a continuing danger to the physical health or safety of the children if returned to the parent." The order supporting the continued removal of the children from Mother and their father also contains unchallenged findings. In these findings, the trial court found sufficient evidence to satisfy a person of ordinary prudence and caution that (1) the children faced an immediate danger to their physical health or safety, (2) the urgent need to protect them required their immediate removal, and (3) they faced a substantial risk of a continuing danger if they were returned home. Thus, we conclude that the affidavit and the unchallenged findings establish that A.N.W. and A.L.W. were

---

*Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (holding that mandamus relief was appropriate because trial court's temporary orders were not subject to interlocutory appeal); *In re Steed*, No. 03–08–00235–CV, 2008 WL 2132014, at *2, n.3 (Tex. App.—Austin May 22, 2008, orig. proceeding) ("Because temporary orders in a suit affecting a parent-child relationship are not subject to interlocutory appeal under the family code, mandamus review is appropriate."), *mand. denied*, 255 S.W.3d 613, 615 (Tex. 2008, orig. proceeding) ("[W]e are not inclined to disturb the court of appeals' decision.")).

removed from Mother under chapter 262 for abuse or neglect. *See id.* at 249 (citing cases in which courts relied on affidavit and temporary orders to determine that children had been removed under Chapter 262 for abuse of neglect).

### 2. *Court order specifying necessary actions*

Mother also asserts that the evidence was legally insufficient to support the Subsection (O) finding "because the record does not contain a court order that specifically establishes the actions necessary for [Mother] to take in order to obtain the return of her children." *See* TEX. FAM. CODE ANN. § 161.001(1)(O). Mother correctly points out that "[a] termination finding under subsection (O) cannot be upheld where there is no court order that specifically establishes the actions necessary for the parent to obtain return of the child." *In re D.W.*, Nos. 01–13–00880–CV, 01–13–00883–CV, 01–13–00884–CV, 2014 WL 1494290, at *9 (Tex. App.—Houston [1st Dist.] Apr. 11, 2014, no pet.) (mem. op.). Mother acknowledges that the Department's service plan, which sets out the tasks and services Mother was required to complete to gain the return of her children, was admitted into evidence at trial. Mother notes in her brief that "[t]ypically, the record contains a status hearing order that approves and orders the [service plan]."

Since Mother filed her brief, the Department has supplemented the clerk's record to include the November 20, 2013 status-hearing order. The order states

that Mother appeared at the hearing with her attorney. The order also approves and incorporates the service plan by reference.

The order provides,

IT IS ORDERED that, except as specifically modified by this order or any subsequent order, the plans of service for [Mother] filed with the Court, and incorporated by reference as if the same were copied verbatim in this order, is APPROVED and made an ORDER of this Court.

In the order, the trial court also found as follows:

[Mother] has reviewed and does understand the service plan and has been advised that unless she is willing and able to provide the children with a safe environment, even with the assistance of a service plan, within the reasonable period of time specified in the plan, her parental and custodial duties and rights may be subject to restriction or to termination or the children may not be returned to her.[5]

Because the status-hearing order is now part of the record, we conclude that Mother's complaint that there was no court order specifically establishing the actions necessary for her to obtain the return of the children is without merit.

---

[5] Mother also mentions in her brief that she did not sign the service plan filed with the trial court. However, a notation on signature page of the service plan states that "this page with original signatures is maintained in the Texas Department of Family Protection Services case file." In addition, as mentioned, the trial court found in the status-hearing order that Mother reviewed the service plan and understood it. Further, Mother's partial compliance with the service plan and the Department's status report to the trial court also indicate that Mother understood the plan's terms. *See In re K.A.A.*, No. 04–13–00019–CV, 2013 WL 3477284, at *2 (Tex. App.—San Antonio July 9, 2013, pet. denied) (mem. op.) (discussing how record showed parent understood requirements of service plan even though parent had not signed service plan).

### 3. Noncompliance with court-ordered service plan

Lastly, Mother asserts that the evidence was legally and factually insufficient to prove that she failed to comply with the court ordered service-plan requirements. Mother claims that caseworker Mills's testimony, indicating that Mother "failed to complete her services," was too conclusory to support the trial court's finding. Mother asserts that "there is no testimony regarding what specific services she failed to complete."

In conjunction with Mills's testimony, the service plan was admitted into evidence. The service plan showed that Mother was required (1) to undergo a psychological assessment, (2) to submit to random urine analysis, with resulting negative results to demonstrate sobriety, (3) to participate in a drug and alcohol assessment, (4) to participate in parenting classes, (5) to demonstrate attachment to her children by managing her children's behavior, using skills she learned in the parenting classes, (6) to complete individual counseling to develop coping skills, (7) to attend all permanency conferences, court hearings, and scheduled family visits, (8) to maintain stable employment and provide her caseworker with monthly income statements, (9) to maintain stable housing for six months, (10) to sign a release of information for the Department to obtain information from "service providers," and (11) to cooperate with her caseworker by maintaining contact with her.

Mills's testimony indicated that Mother had completed only one of these required services. Mills testified that Mother had provided documentation showing that she had completed the required parenting classes. Thus, the trial court, as the factfinder, could have reasonably inferred that Mother did not complete the other ten required services found in the service plan.

In addition, Mills testified that Mother had not visited the children consistently throughout the pendency of the case. Mother had last visited the children in July 2014, but before then, she had not visited them for a long time. This was evidence that Mother had not demonstrated "attachment to her children by managing her children's behavior using skills that she [had] learned in the parenting classes," as required in the service plan. Mills also testified that she had repeatedly asked Mother to send her financial information, but Mother had failed to comply. This was evidence indicating that Mother had failed to provide Mills with monthly income statements and to cooperate with Mills, both service plan requirements. Lastly, the record reflects that Mother failed to attend two of the permanency hearings, another plan requirement.

In her brief, Mother suggests that her indigency status prevented her from completing her services. Mills testified that, because Mother lived in another state, the Department could not pay for the services. Mother also intimates that she could not afford to travel to Texas to attend the permanency hearings. However,

"the Family Code does not allow consideration of excuses for non-compliance with section 161.001(1)(O)." *In re I.R.*, No. 14–14–00626–CV, 2014 WL 6854747, at *6 (Tex. App.—Houston [14th Dist.] Dec. 4, 2014, no pet.) (mem. op.).

In sum, the evidence in the record demonstrates that the Mother did not complete her court-ordered services and tasks. This provided a basis for termination of her parental rights under subsection (O). By failing to complete her service plan, Mother has not demonstrated an ability to provide A.N.W. and A.L.W. with a stable environment. *See I.R.*, 2014 WL 6854747, at *6 (citing *In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, pet. denied) (affirming termination under subsection (O) because mother failed to meet her service plan's material requirements)).

Reviewing all of the evidence in the light most favorable to the termination findings, we conclude that a reasonable fact finder could have formed a firm belief or conviction as to the truth of the termination findings under subsection (O). In light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the termination finding under subsection (O) is not so significant that a fact finder could not reasonably have formed a firm belief or conviction as to the truth of the termination finding under that subsection. *See H.R.M.*, 209 S.W.3d at 108. We hold that the evidence is legally and factually sufficient to support the finding that Mother failed to comply with the provisions of

a court order, which specifically established the actions necessary for her to obtain the return of the children after their removal due to abuse or neglect. *See* Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Gen. Tex. Laws 2012, 2015 (amended 2015) (current version 161.001(b)(1)(O) (West, Westlaw through 2015 R. Sess.).[6]

We overrule Mother's fourth issue.

## C. The Children's Best Interest

In her fifth issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the children's best interest.

### 1. *Applicable legal principles*

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West, Westlaw through 2015 R. Sess.).[7] Among others, the

---

[6] Because of our holding, we need not consider issues two and three, which challenge the trial court's other predicate ground findings. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (recognizing that only one predicate act required).

[7] The Texas Legislature recently amended Family Code section 263.307. *See* Act of Mar. 30, 2015, 84th Leg., R.S., S.B. 219, art. 1, § 1.181, sec. 263.307 (West, Westlaw through 2015 R. Sess.). However, the revisions to the statute were minor

following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of harm to the child; (4) whether there is a history of substance abuse by the child's family or others that have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with minimally adequate health and nutritional care, guidance and supervision, and a safe physical home environment; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *In re R.R.*, 209 S.W.3d at 116.

The Supreme Court of Texas has set out some additional factors that courts may consider when determining the best interest of the child, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in

and did not change the statutory language cited herein. Nor did the amendment affect the numbering of the statutory provisions. Thus, we cite to the current version of the statute.

the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This is not an exhaustive list, and a court need not have evidence on every element listed in order to make a valid finding as to the child's best interest. *C.H.*, 89 S.W.3d at 27. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *See In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent–child relationship. *C.H.*, 89 S.W.3d at 28; *H.D.*, 2013 WL 1928799, at *13. Furthermore, in conducting the best-interest analysis, a court may consider not only direct evidence but also circumstantial evidence, subjective factors, and the totality of the evidence. *See H.D.*, 2013 WL 1928799, at *13.

*2.   Analysis*

Multiple factors support the trial court's determination that termination of Mother's parental rights was in the children's best interest.  The trial court heard testimony from Mills in which she stated that 13-year-old A.N.W. and 11-year-old A.L.W. were returned to their paternal grandmother's home in Chicago on May 28, 2014.  Prior to coming to Texas, Mills confirmed that the girls had lived with their grandmother "basically their entire lives."  While she also confirmed that the girls had a relationship with Mother, Mills indicated that A.N.W. and A.L.W. consider their grandmother to be their mother.  Mills testified that Mother did not visit the children consistently throughout the pendency of the case.  She had visited them in July 2014 but had not seen them for a long time before that visit.  Mills stated that the grandmother wants to adopt A.N.W. and A.L.W. and that the children want to be with their grandmother.  According to Mills, the grandmother has in the past provided a safe home for the girls.  Mills indicated that the grandmother is willing to provide the girls "a safe and stable home free of physical abuse."  In contrast, Mills stated that Mother has not demonstrated the stability to care for the children. We conclude that the foregoing evidence is supportive of termination under the following *Holley* factors: the desires of the children; the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of the individual seeking

custody; the plans for the children by these individuals or by the agency seeking custody; the stability of the home or proposed placement; and the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one. *See Holley*, 544 S.W.2d at 371–72.

In addition, the evidence showed that Mother has a history of illegal drug use. Mills testified that, during the pendency of the case, in October 2013 and in November 2013, Mother had tested positive for both cocaine and marijuana.

Parental drug abuse reflects poor judgment and may be a factor to be considered in determining a child's best interest. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (providing that courts may consider whether there is a history of substance abuse by the child's family). A parent's exercise of poor judgment currently and in the past demonstrates an inability to provide adequate care for a child. *In re J.M.*, No. 01–14–00826–CV, 2015 WL 1020316, at *7 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.). A parent's drug use has also been found to be a condition that can indicate instability in the home environment. *Id.*

After November 2013, Mother submitted to no further drug testing. As discussed *supra*, while she had completed her parenting classes, Mother completed none of the other required tasks and services identified in the court-ordered service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(11) (stating courts may consider the

31

willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time). A factfinder may infer from a parent's failure to take the initiative to complete the services required to regain possession of her children that she does not have the ability to motivate herself to seek out available resources needed now or in the future. *See J.M.*, 2015 WL 1020316, at *7; *see Holley*, 544 S.W.2d at 371–72 (listing parental abilities of individual seeking custody as best-interest factor).

At trial, Mills explained that, because Mother lived in another state, the Department could not pay for Mother's services, including the drug testing. *See Holley*, 544 S.W.2d at 371–72 (identifying availability of programs to individuals seeking custody as best-interest factor). Mother was required to pay for these services herself. Mother suggests in her brief that she could not complete the services because she could not financially afford them. *See id.* (identifying any excuse for the acts or omissions of the parent as best-interest factor). However, Mills testified that she had repeatedly asked Mother to send her financial information, but Mother had not complied. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (providing that courts may consider the willingness and ability of child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision). In addition, Mother had verbally indicated to Mills, in August 2014, that she had a

job.  Mother had stated to Mills that she could not attend trial because she had to work.  The trial court, as fact finder, was entitled to disbelieve any suggested excuses based on the evidence presented, and reasonably could have formed a firm belief or conviction that any excuses for Mother's failure to complete her services were inadequate.  *See In re D.D.D.K.*, No. 07–09–0101–CV, 2009 WL 4348760, at *6 (Tex. App.—Amarillo Dec. 1, 2009, no pet.) (mem. op.) ("It is well established that, in a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies.").

In her brief, Mother also asserts that no evidence was offered at trial to address a number of issues relevant to the best-interest determination.  However, the Department is not required to prove all of the *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest.  *C.H.*, 89 S.W.3d at 27.

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of the parent–child relationship between Mother and her children was in the children's best interest.  We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in

33

favor of the trial court's finding that termination of the parent–child relationship between Mother and the children was in the children's best interest or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. Therefore, after considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent–child relationship is in the children's best interest.

We overrule Mother's fifth issue.

**Ineffective Assistance of Counsel**

In her first issue, Mother asserts that she received ineffective assistance of counsel at trial.

**A.    Applicable Legal Principals**

"In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see* TEX. FAM. CODE ANN. § 107.013(a)(1) (Vernon 2012). The Supreme Court of Texas has held this right to counsel "embodies the right to effective counsel." *M.S.*, 115 S.W.3d at 544. When determining whether a parent received ineffective assistance of counsel, we use the same standard applied in criminal cases: the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *M.S.*, 115 S.W.3d at 545.

To show ineffective assistance of counsel under *Strickland*, the defendant has the burden to prove by a preponderance of the evidence that (1) counsel's performance was deficient, that is, that it fell below an objective standard of reasonableness; and (2) it is reasonably probable that, except for his counsel's unprofessional errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (emphasizing that ineffective assistance claim requires defendant to make requisite showing under both prongs of *Strickland*).

To support a finding that trial counsel was ineffective, the trial record must affirmatively demonstrate his deficiency. *Bermea v. Tex. Dep't of Family & Protective Servs.*, 265 S.W.3d 34, 43 (Tex. App.–Houston [1st Dist.] 2008, pet. denied). When reviewing trial counsel's performance, we take into account the circumstances surrounding the case and focus primarily on whether the manner of his performance was reasonably effective. *H.R.M.*, 209 S.W.3d at 111; *M.S.*, 115 S.W.3d at 545. We must indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). When the record is silent concerning the reasons for counsel's actions, we may not speculate to find trial counsel ineffective. *P.W. v. Dep't of Family and Protective Servs.*, 403 S.W.3d

471, 476 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also Maxwell v. Tex. Dep't of Family & Protective Servs.*, No. 03–11–00242–CV, 2012 WL 987787, at \*6 (Tex. App.—Austin Mar. 23, 2012, no pet.) (mem. op.) (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) ("When the record is silent as to counsel's subjective motivations, courts will ordinarily presume that the challenged action might be considered sound trial strategy.")). We find ineffective assistance only if the conduct is "so outrageous that no competent attorney would have engaged in it." *H.R.M.*, 209 S.W.3d at 111.

Under the second prong of the *Strickland* inquiry, we must review the record to determine whether counsel's deficient performance harmed the defendant. *M.S.*, 115 S.W.3d at 549–50 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). A defendant is harmed when "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *Id.* (quoting *Garcia*, 57 S.W.3d at 440). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *In re V.V.*, 349 S.W.3d 548, 559 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

## B.    Analysis

Mother first criticizes trial counsel for making an oral motion for continuance at the start of trial rather than filing a written motion for continuance with a supporting affidavit.  Mother is correct that a motion for continuance must be in writing, state the specific facts supporting the motion, and be verified or supported by affidavit.  *See* TEX. R. CIV. P. 251; *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *In re A.A.*, No. 05–07–01698–CV, 2008 WL 2514346, at *2 (Tex. App.—Dallas June 25, 2008, no pet.) (mem. op.).

To reiterate, at the beginning of trial, counsel stated that Mother had moved to Iowa and was working there.  He informed the trial court that Mother had told him that she thought trial was the following month.  Counsel then stated,

> [Mother's] number is one of the numbers that changes all the time, quite frequently.  I'm sure the Court has dealt with that in the past.  I asked CPS last week for updated phone numbers.  After reasking this morning, I was provided, then called her this morning.  And my client informed me that she has progressed a little further in her plan than what CPS believes.  And she sent them to CPS, and CPS said they had not gotten a copy of the information.

The trial court denied the motion for continuance.

We are mindful that counsel is not ineffective for failing to undertake futile actions.  *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991).  Here, Mother has not shown that a written, verified motion for continuance would have been granted.

Although counsel stated that Mother had informed him that she thought trial was the following month, Mills testified that she had spoken to Mother two weeks before trial. Mills had informed Mother of the trial date. Mills stated that Mother had told her that she could not attend trial on that date because she had to work. In addition, the record shows that the one-year statutory deadline for adjudication of a suit seeking to terminate parental rights, pursuant to Family Code section 263.401, was fast approaching. *See* TEX. FAM. CODE ANN. § 263.401(a) (Vernon 2014). Furthermore, Mother had failed to appear at other proceedings in the case, despite the fact that her appearance at those proceedings was a required condition for reunification with her children.

Based on this record, we cannot conclude that the trial court would have granted Mother's motion for continuance, even if it had been in writing and supported by an affidavit. Thus, Mother has not shown that counsel performed deficiently when he did not file a written, verified motion for continuance. *See A.A.,* 2008 WL 2514346, at *2–*3 (holding counsel not ineffective for failing to file written motion for continuance and affidavit); *see also In re K.L.L.H*, No. 06–09–00067–CV, 2010 WL 87043, at *7 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.) (holding that counsel not shown to be deficient for failing to request a trial continuance when counsel may have believed, under the circumstances, such request would have been futile).

Mother next criticizes counsel because he "filed a general denial 'subject to proper service on [Mother].'" Mother asserts that, "[b]y filing a general denial, [she] made a voluntary appearance and thereby waived service of process." She claims that "the way to contest a court's jurisdiction is by making a special appearance." However, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Mother makes no showing that filing a special appearance would have been appropriate or successful in this case.

Mother further asserts that counsel failed "to maintain contact with his client as evidenced by his representation to the court that Mother thought trial was next month" and by his statement to the trial court that he had obtained Mother's phone number from Mills. However, the record is silent regarding the amount of contact counsel had with Mother or whether Mother had been cooperative with counsel. As stated, claims of ineffective assistance of counsel must be firmly founded in the record. *See id.*

Mother also claims that counsel was unfamiliar with the facts, as shown by his questioning of Mills at trial. For example, she points out that counsel did not appear to know whether the father had taken the children from Mother or from their grandmother. However, the record is also not clear on this point. The

39

Department's affidavit offered in support of the initial removal of the children appeared to indicate that the children were taken from Mother. In contrast, Mills testified that the children were taken from the grandmother.

Mother also criticizes counsel because he asked Mills to confirm that the trial court had excused Mother from attending hearings in the case. Mills stated that she did not recall the court doing so. Mother asserts that counsel should have offered a hearing transcript or an order to contradict Mills; however, Mother makes no showing that such contradicting proof exists.

Mother further asserts that counsel was ineffective because he did not object at trial to the Department's leading questions, and counsel "asked only open-ended questions." Here, the record is silent regarding why counsel chose to ask the questions that he asked and why he did not object to the Department's questions. As stated, when the record is silent concerning the reasons for counsel's actions, we may not speculate to find trial counsel ineffective. *P.W.*, 403 S.W.3d at 476; *Walker*, 312 S.W.3d at 622–23. Instead, we must indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

Additionally, Mother points out that the trial record is short. She complains that the Department's case was based on the conclusory statements and beliefs of

40

Mills.   Mother criticizes counsel because he "failed to question the basis of conclusory statements."  We, however, can envision a reasonable trial strategy for why counsel did not ask Mills the basis for her statements: counsel did not want to help the Department develop its case.

Finally, Mother points out that, at the end of trial, "counsel in his one sentence closing asked the court to terminate his client's parental rights on (O) grounds only."  Mother asserts that counsel should have, instead, pointed to the lack of evidence offered to support the termination findings.

We agree with the Department that that the predicate finding under subsection (O) was proven at trial.  Counsel may have pointed to subsection (O) for strategic reasons; that is, to dissuade the trial court from making findings under subsections (D) and (E).  As the Department points out, Family Code subsection 161.001(1)(M) allows a court to terminate the parent–child relationship if it finds by clear-and-convincing evidence that the parent has had her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E).  TEX. FAM. CODE ANN. § 161.001(M) (West, Westlaw through 2015 R. Sess.).  Here, counsel may have been attempting to avoid findings under subsections (D) and (E) to prevent such findings from being used against Mother in the future.  *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (holding that counsel should not be

deemed ineffective if any strategic motivation can be imagined for counsel's challenged conduct).

We hold that Mother has not met her burden to demonstrate ineffective assistance of counsel by a preponderance of the evidence because she has not shown that her trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064. Accordingly, we overrule Mother's first issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.