# NO. 12-19-00301-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE 3RD* |
| *J.G., III, K.G., AND G.G.,* | *§* | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | *§* | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.G., II appeals the termination of his parental rights. In one issue, he challenges the legal and factual sufficiency of the evidence to support the termination order. We affirm.

## BACKGROUND

J.G., II is the father and A.K.[1] is the mother of J.G., III, K.G., and G.G. On July 31, 2018, the Department of Family and Protective Services (the Department) filed an original petition for protection of J.G., III, K.G., and G.G., for conservatorship, and for termination of J.G., II's and A.K.'s parental rights. The Department was appointed temporary managing conservator of the child, and the parents were appointed possessory conservators with limited access to, and possession of, the children.

At the conclusion of a bench trial, the trial court found that J.G., II engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsection (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between J.G., II, J.G., III, K.G., and G.G. is in the children's best

---

[1] At the conclusion of a bench trial, the trial court found that A.K. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between A.K., J.G., III, K.G., and G.G. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between A.K., J.G., III, K.G., and G.G. be terminated. A.K. is not a party to this appeal.

interest. Based on these findings, the trial court ordered that the parent-child relationship between J.G., II, J.G., III, K.G., and G.G. be terminated. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2019); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2019); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2019); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619

S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 16.001(b)(1)(O)

In his sole issue, J.G., II argues the evidence is legally and factually insufficient to terminate his parental rights pursuant to subsection (O) of Texas Family Code Section 161.001(b)(1). Specifically, J.G., II contends that the evidence did not show that his children were removed for abuse or neglect as required by subsection (O).

**Applicable Law**

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (West Supp. 2018). Subsection (O) does not require that the parent who failed to comply with a court order be the same parent

3

whose abuse or neglect of the child warranted the child's removal. *In re S.N.*, 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Had the legislature intended such a requirement, it could have easily provided that conservatorship be 'as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child *by the parent*.'"); *In re D.R.J.*, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.).

## Analysis

Here, J.G., II does not argue that he failed to comply with the provisions of a court order, i.e., the family service plan, that established the actions necessary for him to obtain the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Nor does he argue that the children were not in the permanent or temporary managing conservatorship of the Department for not less than nine months. *Id.* His sole argument is that the children were not removed from the parent under Chapter 262 for the abuse or neglect of the children. *Id.* He contends that the children were removed for the *risk* of drug use and possible neglect and cites *In re S.A.P.*, 169 S.W.3d 685 (Tex. App.—Waco 2005, no pet.), in support of his argument. In that case, the appellate court reversed, having determined that the child was removed only because of the risk of the parents' prior history. *Id.* at 705-6.

However, the decision in *In re S.A.P.,* based on subsection (O), has been abrogated by the Texas Supreme Court in *In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013). The Texas Supreme Court determined that "subsection O requires proof of abuse or neglect," but disagreed "that those terms can never be read to include risk." *Id.* at 246. The supreme court considered the term's use and meaning in the context of the Family Code removal provisions and the Legislature's definition of "abuse" and "neglect" in related chapters. *Id.* Consistent with Chapter 262's removal standards, the supreme court found that "abuse" and "neglect" are to be considered broadly and necessarily includes the risks or threats of the environment in which the child is placed. *Id.* at 248. If a parent has neglected, sexually abused, or otherwise endangered his or her child's physical health or safety, such that initial and continued removal is appropriate, the child has been "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child." *Id.*; TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

Appellate courts have recognized the supreme court's determination "that [subsection (O)] can be satisfied by risk of abuse or neglect." *In re C.C.*, No. 10-16-00129-CV, 2016 WL 6808944, at *11 (Tex. App.—Waco Nov. 16, 2016, no pet.) (mem. op.); *see also In re M.G.*, 585 S.W.3d

51, 56-57 (Tex. App.—Eastland 2019, no pet.); **D.T. v. Tex. Dep't of Family & Protective Servs.**, No. 03-18-00770-CV, 2019 WL 1526429, at *3 (Tex. App.—Austin Apr. 9, 2019, no pet.) (mem. op.); **In re A.M.L.M.**, No. 13-18-00527-CV, 2019 WL 1187154, at *6-7 (Tex. App.—Corpus Christi Mar. 14, 2019, no pet.) (mem. op.); **In re D.J.V.**, No. 14-15-00419-CV, 2015 WL 6498917, at *4-5 (Tex. App.—Houston [14th Dist.] Oct. 27, 2015, no pet.) (mem. op.).

Further, in **In re E.C.R.**, the Supreme Court considered the affidavit in support of removal, which showed physical abuse of a sibling by the mother, injuries sustained by the child, the mother's leaving the child with an abusive boyfriend, and the mother being incarcerated and unable to care for the child. **In re E.C.R.**, 402 S.W.3d at 248. The supreme court explained that this affidavit, even if not evidence for all purposes, shows what the trial court relied on in determining whether removal was justified. **Id.**; **In re A.M.L.M.**, 2019 WL 1187154, at *6-7 (considering allegations in removal affidavit in concluding children were removed for risk of neglect, including abuse of drugs by mother and father and eighteen previous investigations by the Department into the parents). Moreover, in Chapter 262, the trial court, following the adversary hearing, must order the child returned to his parent unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the child's physical health or safety that was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the child's welfare;

(2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the child's safety, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

TEX. FAM. CODE ANN. § 262.201(g) (West Supp. 2019).

In this case, the removal affidavit shows that the Department received an intake report in June 2018, alleging neglectful supervision of J.G., III, K.G., and G.G. The report specifically alleged that (1) A.K. used methamphetamine, lived with her paramour, the children, and the maternal grandparents, and A.K. and the maternal grandparents allegedly did not want the children; (2) the family had difficulty purchasing food; and (3) the house was not clean or in good repair. The Department investigator, Brandy Friendly, testified that the family denied these

allegations, stating that the family got along, denied any concerns about drug use, and took good care of the children. A.K. stated that she formerly used methamphetamine, but she had been clean for two years. Friendly also interviewed J.G., II who stated that he resides with friends and was unable to support the children.

At the end of June 2018, A.K. tested positive for methamphetamine. She admitted using methamphetamine about a month prior and being around others smoking methamphetamine. The Department initiated a safety plan, mandating that A.K. leave the home and placing the children in the home with their maternal grandparents. The removal affidavit also stated that Friendly contacted J.G., II several times, requesting his attendance at a family team meeting, an update on his current living arrangements, and a family member who could assist him with the children. J.G., II failed to respond to these requests.

According to the removal affidavit, the family was involved in three previous Department cases, including allegations of neglectful supervision and physical abuse. In 2010, allegations of neglectful supervision of J.G., III by A.K. and a grandmother, and physical abuse by J.G, II and A.K. were found "reason to believe." During that incident, J.G., II and A.K. engaged in "serious domestic violence" while in the presence of the child, with the father hitting, slapping, and kicking the mother while she held the child. J.G., II was arrested for aggravated assault. Further, A.K.'s criminal history includes convictions for possession of a controlled substance, theft, and evading arrest or detention. J.G., II's criminal history includes convictions for burglary of a habitation, felony arson, assault of a family member—impeding breath/circulation, and assault causing bodily injury.

In its temporary order following the show cause hearing, the trial court stated that it reviewed and examined the Department's pleadings and the sworn affidavit of removal. Based upon the facts contained therein and the evidence presented at the hearing, the trial court found sufficient evidence to show a continuing danger to the physical health or safety of the children caused by an act or failure to act of the person entitled to possession of the children, that continuation of the children in the home would be contrary to their welfare, and that reasonable efforts were made to prevent or eliminate the need to remove the children. At that time, the trial court appointed the Department as managing conservator of the children and A.K. and J.G., II were appointed possessory conservators with limited access to, and possession of, the children.

According to the Department status report, the children were living with their maternal grandparents.

At trial, Ashley Morgan, the Department caseworker, testified that the Department received reports of drug use in the home occupied by A.K., J.G., III, K.G., G.G., the maternal grandmother, and the maternal step-grandfather. A.K. admitted to drug use and tested positive, but the children did not. However, there were concerns that A.K. used drugs around the children.

**Conclusion**

From the above evidence, a reasonable fact finder could have determined that the affidavit supporting removal, together with other unchallenged findings,[2] established that the children were removed from the parent under Chapter 262 for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d at 248-9. The evidence shows that the trial court could have determined that the removal affidavit showed that A.K. tested positive for drugs while in the possession of the children, that J.G., II lacked interest or ability to support the children, that A.K. and J.G., II had a history with the Department including a finding that the parents physically abused J.G., III, and that both parents had significant criminal history. *Id.* Although J.G., II. argued that removal for the risk of drug abuse and possible neglect was not sufficient, this evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding and formed a firm belief or conviction that J.G., II's parental rights should be terminated under subsection (O). *See In re C.H.*, 89 S.W.3d at 25.

Therefore, we hold that the evidence is legally and factually sufficient to support termination of J.G., II's parental rights under subsection (O) of Texas Family Code Section 161.001(b)(1)). Accordingly, we overrule J.G., II.'s sole issue.[3]

**DISPOSITION**

Having overruled J.G., II's sole issue, we ***affirm*** the judgment of the trial court.

---

[2] Temporary orders in a suit affecting the parent-child relationship are not subject to an interlocutory appeal under the Texas Family Code. *See* TEX. FAM. CODE ANN. § 105.001(e) (West 2019); *In re Pharis,* No. 12-06-00350-CV, 2006 WL 3735107, at *1 (Tex. App.—Tyler Dec. 20, 2006, orig. proceeding) (mem. op.); *see also In re Hughes*, 446 S.W.3d 859, 860 (Tex. App.—Texarkana 2014, no pet.) (mandamus appropriate remedy for appeal of temporary order following adversary hearing wherein child remained in care of Department). Here, J.G., II did not seek a petition for writ of mandamus of the trial court's decision following the show cause hearing.

[3] In his brief, J.G., II did not dispute the trial court's finding that termination of his parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); TEX. R. APP. P. 47.1.

**BRIAN HOYLE**
Justice

Opinion delivered February 19, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 19, 2020**

**NO. 12-19-00301-CV**

**IN THE INTEREST OF J.G., III, K.G., AND G.G., CHILDREN**

Appeal from the 3rd District Court
of Henderson County, Texas (Tr.Ct.No. FAM18-0600-3)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*